UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

---

MOLLY BAUDOIN,

    Plaintiff,

v.

SOUTHCARE MEDICAL, LLC,

    Defendant.

---

CASE NO. 19-cv-_____

JUDGE _____

MAGISTRATE JUDGE _____

**JURY TRIAL DEMANDED ON SPECIFIC ISSUES**

## **COMPLAINT**

**BIZER & DEREUS**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Emily A. Westermeier (LA # 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

## **PRELIMINARY STATEMENT**

1.  Molly Baudoin is a deaf individual who communicates in American Sign Language ("ASL"), which is her primary language. Ms. Baudoin is diagnosed with Usher Syndrome, which is the cause of her deafness and which has also caused Ms. Baudoin to lose her peripheral vision, along with diminished vision overall. Ms. Baudoin is not fully proficient in English, and has difficulty reading complex terminology and documents in written English. In May 2018, Ms. Baudoin first sought treatment at Defendant's clinic to establish Defendant as her primary care provider. This action concerns the Defendant's refusal to provide medical care to Ms. Baudoin because she is Deaf and requested an interpreter at her appointments.

2.  As a Deaf individual who communicates primarily in ASL, it is vital that Ms. Baudoin have access to a qualified in-person interpreter or another auxiliary aid at her medical appointments, in order to fully communicate with the physician and their staff.

3.  Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct doctor-patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips.

4.  Moreover, ASL (Ms. Baudoin's primary language) and English are two completely distinct languages that are mutually unintelligible. They are as different from one another as English is from Russian, for example. Thus, expecting a Deaf individual like Ms. Baudoin to lip-read English speakers is also not an appropriate alternative to a qualified in-person interpreter.

5.  Nor is it appropriate to refuse an interpreter or other auxiliary aid and rely on

passing written notes instead.  Many deaf individuals, including Ms. Baudoin, do not have full knowledge of written English. Indeed, the median reading comprehension level in English of deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language.  In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Further, while a hearing person could easily ask an employee or staff member to explain an unknown medical word or phrase, a Deaf person is unable to ask for assistance in understanding unknown English words without the aid of a sign language interpreter or other auxiliary aid.

6.	Video Remote Interpreting (VRI) is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter.

7.	Ms. Baudoin brings this lawsuit seeking injunctive and declaratory relief and attorneys' fees and costs to redress the Defendant's unlawful discrimination and retaliation on the basis of disability in violation of Title III of the Americans With Disability Act, 42 U.S.C. § 12181 ("ADA"); Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116.  Ms. Baudoin also seeks compensatory and nominal damages pursuant to the Rehabilitation Act and Section 1557.[1]

8.	With regards to Ms. Baudoin's request for nominal damages, it is Ms. Baudoin's position that an award of nominal damages would confer significant civil rights to the public, as

---

[1] Ms. Baudoin recognizes that money-damages are not available under Title III of the ADA.

a judgment in her favor against the Defendant, regardless of the amount, would deter the Defendant from discriminating against deaf individuals in the future.

## THE PARTIES

9. Plaintiff Molly Baudoin (hereinafter "Ms. Baudoin") brings this action and is an individual residing in Lafayette, Louisiana. Ms. Baudoin communicates primarily in ASL and is substantially limited in the major life activities of hearing and speaking and is a qualified person with a disability within the meaning of the ADA, RA, and Section 1557.

10. Defendant SOUTHCARE MEDICAL, LLC is a limited liability company organized in Louisiana with the domicile of 1305 North State Street, Abbeville, LA 70510. The Defendant owns, leases, and/or operates SouthCare Medical Clinic, which is located at the same address. The Defendant is operating a place of public accommodation under federal antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making the Defendant subject to the requirements of the ADA, Section 1557 and the RA.

## JURISDICTION & VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Ms. Baudoin's claims arising under federal law.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendant committed discriminatory acts within the jurisdiction of this District and a substantial part of the events that give rise to the claims occurred in this District.

## STATEMENT OF FACTS

13. Ms. Baudoin is a deaf individual who communicates primarily through ASL. Ms. Baudoin has been deaf since birth and is diagnosed with Usher Syndrome, which is the cause of her deafness, and which also negatively impacts her vision.

14. Ms. Baudoin requires auxiliary aids and services, like an in-person sign language interpreter, to communicate in an equivalent manner to non-disabled, hearing persons, in a medical setting. Ms. Baudoin also requires a sign language interpreter in order to understand her doctors and nurses and to assist her with asking questions in ASL about the meaning of complex documents that are written in English and documents that use advanced terminology.

15. Ms. Baudoin has knowledge of some written and spoken English. However, she is not fully proficient in comprehending written English and cannot participate in long discussions in English. Ms. Baudoin's entire formal education occurred in ASL in environments designed for Deaf individuals.

16. On May 29, 2018, Ms. Baudoin had an appointment at SouthCare Medical Clinic with Dr. Anita Deborah. Ms. Baudoin sought treatment at SouthCare Medical Clinic for chronic medical issues, including a skin rash and high blood pressure, and to establish Dr. Deborah as her primary care provider. During the appointment, Dr. Deborah relied upon Ms. Baudoin's daughter to interpret for her mother.

17. On November 12, 2018, Ms. Baudoin went to Defendant's clinic for a follow-up appointment. During the appointment, Ms. Baudoin requested a sign language interpreter via handwritten notes. Dr. Deborah responded in writing that Ms. Baudoin could get her own interpreter in the future. Ms. Baudoin then asked Dr. Deborah to call the Deaf Action Center in Lafayette to schedule an interpreter. Dr. Deborah wrote to Ms. Baudoin that "you have to call them and make appt (sic) yourself because they charge $50/hour…" Dr. Deborah again insisted

that they pass notes during the appointment to communicate. Without any other options available to her, Ms. Baudoin acquiesced to complete the appointment by passing notes with Dr. Deborah. However, Ms. Baudoin was unable to effectively communicate with Dr. Deborah about her course of treatment and prescribed medications through note passing.

18.     On November 13, 2018, Ms. Baudoin called SouthCare Medical Clinic through a video relay service to ask follow-up questions about her November 12, 2018 appointment with Dr. Deborah. Specifically, Ms. Baudoin was confused about the medications prescribed to her, over the counter medications she was allowed to take, and instructions given by Dr. Deborah for her course of treatment. A staff member at SouthCare Medical Clinic communicated Ms. Baudoin's questions to Dr. Deborah.

19.     Dr. Deborah's response to Ms. Baudoin's confusion was to advise Ms. Baudoin to see another doctor rather than answering Ms. Baudoin's questions. Dr. Deborah noted that all communication with Ms. Baudoin was done in writing at her appointment the day before and that Ms. Baudoin did not have questions when she left. Dr. Deborah wrote in Ms. Baudoin's chart that she "have (sic) difficulty to understand (sic) the Provider, may (sic) suggestion to find a new doctor that she will get better understanding. I did my part to try to explained (sic)."

20.     On or around December 10, 2018, Ms. Baudoin called SouthCare Medical Clinic to request a refill of her prescription. Ms. Baudoin was then informed that she was no longer a patient of Dr. Deborah and that her prescription could not be refilled. When Ms. Baudoin enquired further into why she was no longer a patient, the staff member at SouthCare Medical Clinic informed Ms. Baudoin that she could get a refill only if she had another appointment with Dr. Deborah. Ms. Baudoin asked if SouthCare Medical Clinic would provide a sign-language interpreter for the appointment, but was told that she would need to pay for her own sign

language interpreter, rely on her daughter to interpret, or agree to communicate through passing notes. Ms. Baudoin did not schedule the appointment with Dr. Deborah Because SouthCare Medical Clinic refused to provide a sign language interpreter for the appointment.

21.     Upon information and belief, SouthCare Medical Clinic's policy for patients with limited English proficiency is for the patient to "get language access help through federal-state provider or your insurance."[2]

22.     Upon information and belief, SouthCare Medical Clinic did not take any steps necessary to procure any sign language interpreter for appointments with Ms. Baudoin.

23.     To date, SouthCare Medical Clinic has not taken any steps to rectify its discrimination against Ms. Baudoin.

24.     The Defendant's denial of medical care with auxiliary aids to Ms. Baudoin constituted discrimination on the basis of her disability.  The Defendant's termination of Ms. Baudoin as a patient in response to her assertions of her civil rights as an individual with a disability constituted further discrimination and retaliation. This discrimination caused Ms. Baudoin to experience fear, anxiety, frustration, indignity, emotional distress, mental anguish, embarrassment, and humiliation, as well as a violation of her civil rights.

25.     The Defendant, through its staff, employees, nurses, and/or doctors, knew or should have known of its obligations under the ADA and Section 504 of the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are deaf, and to develop policies to promote compliance with these statutes.

26.     The Defendant, through its staff, employees, nurses, and/or doctors, knew or should have known that the actions and/or inactions of its staff created an unreasonable risk of causing Ms. Baudoin greater levels of fear, anxiety, frustration, indignity, emotional distress,

---

[2] See http://www.southcaremed.com/news-and-policy.html  (last visited February 28, 2019).

mental anguish, embarrassment, and/or humiliation than a hearing person would be expected to experience.

27. The harm sustained by Ms. Baudoin herein is the expected and foreseeable consequence of the Defendant's failure to comply with the requirements and mandates of federal civil rights law. The statute and accompanying regulations exist to ensure that individuals with disabilities who have communication limitations will have full use of places of public accommodations. When the Defendant failed to adhere to its obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Ms. Baudoin in this lawsuit.

28. The Defendant, through its staff, employees, nurses, and/or doctors, terminated Ms. Baudoin as a patient on account of her disability because it denied her requests for a sign language interpreter, which caused Ms. Baudoin's to be confused about her medications and course of treatment.

29. The Defendant, through its staff, employees, nurses, and/or doctors, excluded Ms. Baudoin from the medical services offered to the general public on account of her disability.

30. The Defendant, through its staff, employees, nurses, and/or doctors, refused to provide accommodations for Ms. Baudoin's disability.

31. The Defendant, through its staff, employees, nurses, and/or doctors, retaliated against Ms. Baudoin solely on the basis of her efforts to assert her civil rights.

32. Despite the Defendant's knowledge of its obligation to accommodate persons with disabilities—including individuals that are deaf—the Defendant did not take adequate steps to ensure that it communicated with Ms. Baudoin in a manner equivalent to hearing persons.

33. As a result of the Defendant's refusal to provide accommodations to Ms. Baudoin, she was denied access to medical services on the basis of disability.

34. The Defendant discriminated against Ms. Baudoin with deliberate indifference to her disability and related communication needs.

35. Based on the facts alleged above, the Defendant intentionally discriminated against Ms. Baudoin.

36. Further, the Defendant was purposeful in its choices, which is sufficient to constitute intentional discrimination under the RA and ACA.

37. The harm sustained by Ms. Baudoin herein is the expected and foreseeable consequence of the Defendant's failure to comply with the requirements and mandates of the RA and ACA. These statutes and accompanying regulations exist to ensure that those with communication limitations will have equal access to places of public accommodations. When the Defendant failed to adhere to its obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Ms. Baudoin in this lawsuit.

38. By and through the Defendant's failure to make its healthcare services meaningfully accessible to individuals who are deaf, the Defendant has committed disparate impact discrimination sufficient to state a claim for damages under the RA and ACA.

39. Ms. Baudoin is presently deterred from receiving the Defendant's healthcare services due to their refusal to accommodate her disability and their outright hostility towards her assertion of her rights. The Defendant's discrimination will clearly continue absent a court order. Ms. Baudoin desires to utilize the Defendant's services in the near future, the proximity of the facility to her home, and her ongoing need for the specific medical care provided by the

Defendant. Ms. Baudoin's medical problems persist and she would like to receive medical care from SouthCare Medical Clinic as soon as possible. Thus, Ms. Baudoin clearly evidences an intent to return to the Defendant for ongoing medical care, but needs the Defendant to provide the necessary accommodations for her disabilities along with the provision of medical care.

40. Due to the ongoing discrimination she has encountered, Ms. Baudoin reasonably anticipates that she will encounter discrimination again in the near future when she next returns to Defendant's facility for medical care, without taking legal action to protect her rights.

## CLAIM I: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

41. Ms. Baudoin repeats and realleges paragraphs 1-40 in support of this claim.

42. At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to the Defendant's conduct.

43. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Defendant's conduct.

44. At all times relevant to this action, Ms. Baudoin has been substantially limited in the major life activities of hearing and communicating, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

45. The Defendant owns and operates a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

46. Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §

12182(a).

47. Title III of the ADA further provides that "[i]t shall be discriminatory to subject an individual … on the basis of disability … to a denial of the opportunity of the individual … to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i). Moreover, Title III of the ADA similarly provides that "[i]t shall be discriminatory to afford an individual … on the basis of a disability … with the opportunity to participate in or benefit from a good, service, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." *Id.* at § 12182(b)(1)(A)(ii).

48. Federal regulations implementing Title III of the ADA provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

49. Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 28 C.F.R. § 36.303(a).

50. Similarly, these federal regulations state that a public entity "shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities…" 28 C.F.R. § 36.302.

51. Additionally, the ADA prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful [under the statute]." 42 U.S.C. § 12203(a). Similarly, the ADA states that "[i]t shall be unlawful to coerce, intimidate, threaten, or

interfere with any individual in the exercise or enjoyment of … any right granted or protected by this [statute]." *Id.* at § 12203(b).

52. Based on the above allegations, the Defendant discriminated against Ms. Baudoin on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

53. The Defendant further retaliated against, intimidated, and threatened Ms. Baudoin because she exercised her rights under the ADA.

54. As set forth above, absent injunctive relief there is a clear risk that the Defendant's actions will recur and cause Ms. Baudoin additional injury.

55. Ms. Baudoin is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

## CLAIM II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

56. Ms. Baudoin repeats and realleges paragraphs 1-55 in support of this claim.

57. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to the Defendant's conduct.

58. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendant's conduct.

59. At all times relevant to this action, Ms. Baudoin had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

60. At all times relevant to this action, the Defendant offered a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

61. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or her disability, be excluded from

the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

62. The Defendant discriminated against Ms. Baudoin, solely on the basis of disability, by denying her equal access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure communication equivalent to that provided to hearing persons, in violation of 29 U.S.C. § 794.

63. The Defendant also discriminated against Ms. Baudoin, solely on the basis of disability, by denying her reasonable accommodation requests, in violation of 29 U.S.C. § 794.

64. Ms. Baudoin is therefore entitled to seek and recover compensatory and nominal damages for the injuries and loss she sustained as a result of the Defendant's discriminatory conduct and deliberate indifference alleged herein, pursuant to 29 U.S.C. § 794(a).

65. Ms. Baudoin is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

### CLAIM III: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

66. Ms. Baudoin repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

67. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect, and applied to Defendant's conduct.

68. At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

69. At all times relevant to this action, Ms. Baudoin had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

70. At all times relevant to this action, Ms. Baudoin's primary language for communication was American Sign Language, and not English; Ms. Baudoin has limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

71. At all times relevant to this action, the Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, the Defendant is operating health programs or activities receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

72. Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

73. The Defendant discriminated against Ms. Baudoin solely on the basis of disability, by excluding her from the services, programs, and benefits that the Defendant offered to other individuals in violation of Section 1157, 42 U.S.C. § 18116.

74. The Defendant discriminated against Ms. Baudoin solely on the basis of disability, by denying her equal access to the services, programs, and benefits that the Defendant offered to other individuals and by refusing to provide auxiliary aids and services necessary to ensure access to its services in violation of Section 1157, 42 U.S.C. § 18116.

75. The Defendant discriminated against Ms. Baudoin by failing to ensure equivalent communication to that provided hearing persons, through its refusal to provide qualified sign language interpreters on-site and/or through VRI machines.

76. The Defendant discriminated against Ms. Baudoin by denying her requests for reasonable accommodations.

77. Ms. Baudoin is therefore entitled to seek and recover compensatory and nominal damages for the injuries and loss she sustained as a result of the Defendant's discriminatory conduct as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

78. Ms. Baudoin is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Baudoin respectfully prays that this Court grant the following relief against the Defendant:

A. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Defendant's policies, procedures, and practices subjected Ms. Baudoin to unlawful discrimination in violation of the RA and Section 1557;

B. Issue an injunction ordering the Defendant:

   i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Ms. Baudoin or other deaf individuals by failing to provide accommodations in the form of a sign language interpreter and other appropriate auxiliary aids and services;

   ii. to develop, implement, promulgate, and comply with a policy requiring that when a deaf individual requests an in-person interpreter for effective

        communication, one will be provided as soon as practicable in all services offered by the Defendant;

    iii.    to develop, implement, promulgate, and comply with a policy to ensure that the Defendants will notify individuals who are deaf or hard of hearing of their right to accommodations in the form of a sign language interpreter and other appropriate auxiliary aids and services. This notification will include posting explicit and clearly worded notices that the Defendant will provide sign language interpreters, videophones, and other communication services to ensure equal access for deaf persons;

    iv.    to develop, implement, promulgate, and comply with a policy to ensure that deaf individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

    v.    to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

    vi.    to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf under the ADA, RA, and ACA; and

    vii.    to train all its employees, staff, and other agents on a regular basis about how to obtain interpreters when reasonably requested by deaf individuals.

C.    Award to Ms. Baudoin:

    i.    Compensatory and nominal damages pursuant to the RA and ACA;

    ii.    Reasonable costs and attorneys' fees pursuant to the RA and ACA;

    iii.    Interest on all amounts at the highest rates and from the earliest dates

      allowed by law;

    iv.    Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Ms. Baudoin demands trial by jury on the issues of (1) the injuries she suffered as a result of the Defendant's discriminatory conduct; and (2) the quantum of damages that should be awarded.

Dated: February 28, 2019

                                                         Respectfully Submitted,

                                                         **BIZER & DEREUS**
                                                         Attorneys for Plaintiff
                                                         Andrew D. Bizer (LA # 30396)
                                                         andrew@bizerlaw.com
                                                         Garret S. DeReus (LA # 35105)
                                                         gdereus@bizerlaw.com
                                                         Emily A. Westermeier (LA # 36294)
                                                         ewest@bizerlaw.com
                                                         3319 St. Claude Ave.
                                                         New Orleans, LA 70117
                                                         T: 504-619-9999; F: 504-948-9996

                                               By:/s/ Emily A. Westermeier
                                                         Emily A. Westermeier